# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MARKEL INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | Case No.: 2:18-cv-00456-R-JPRx<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF SUMMARY JUDGMENT**<br><br>**Hon. Manuel L. Real** |

The Court, having reviewed Defendant, Markel Insurance Company's ("MIC") Motion for Summary Judgment, the Opposition Papers filed by Plaintiff, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and the Reply Papers filed by MIC, as well as the accompanying Exhibits and Declarations filed concurrently, hereby issues its Findings of Fact and Conclusions of Law as follows:

# Findings of Facts

1. On December 28, 2011, Kenneth Greathouse ("Greathouse") filed a lawsuit seeking damages for personal injuries against Encino Oil, LLC ("Encino Oil") and White Oak Burbank ("White Oak Shell") entitled *Greathouse v. Encino Oil LLC,* Case No. LC095856 in the Los Angeles Superior Court (the "Greathouse Action").

2. The Greathouse Action alleged that Greathouse was injured on August 13, 2011, when he fell through a secondary manhole cover at the White Oak Shell station in Encino, California.

3. Greathouse alleged that he suffered a left rotator cuff tear, a torn left biceps tendon and an injury to his left leg.

4. Greathouse underwent surgical procedures to repair the rotator cuff tear (in September 2011) and the torn biceps tendon (in June 2012) and claimed that he would need two additional surgeries in the future.

5. Markel Insurance Company ("MIC") agreed to defend Encino Oil and White Oak Shell (referred to jointly as "White Oak") pursuant to a primary policy of liability insurance issued to White Oak which had a $1 million limit of liability.

6. National Union Fire Insurance Company of Pittsburgh, PA ("National Union") issued an excess liability insurance policy to White Oak with a limit of $4 million in excess of MIC's primary limit.

7. MIC initially retained the firm of Stone & Hiles, LLP as defense counsel for White Oak but later substituted the firm of Anderson, McPharlin & Conners, LLP ("Anderson firm"). The two firms are referred to jointly as "defense counsel."

8. Lead counsel for the defense, Thomas Kearney, was a senior partner in the Anderson firm with experience in the defense of personal injury litigation.

9. The Anderson firm submitted a Pre-Trial Report to MIC on March 31, 2016, expressing its opinion the there was a 50% chance of a total defense verdict with an

extremely high probability that at least some fault would be apportioned to Greathouse.

10. Defense counsel interviewed multiple employees of Thompson & Harvey Bay Area, LLC, Greathouse's employer, following the accident and also conducted an inspection of the accident site with White Oak's trucking and fuel delivery expert, Larry Miller.

11. The investigation by defense counsel and expert Miller led to a determination that there was questionable evidence regarding whether the sump cover was a dangerous condition, little or no evidence that White Oak had notice of the condition, evidence that Greathouse's damages were overstated, and evidence potentially supporting a finding that Greathouse was contributorily negligent and/or assumed the risk because he was aware of the danger of stepping on the sump cover.

12. Greathouse estimated a "near seven figure" value for the case, which defense counsel viewed as unrealistic given that the estimate far exceeded Greathouse's documented medical costs and lost wages.

13. Defense counsel predicted "the most probable reasonable verdict range as $88,500 to $333,500 with a reasonable settlement range of $95,000 to $162,000.

14. Greathouse made multiple settlement offers, the greatest of which was for the $1 million policy limit on the MIC Policy.

15. The highest settlement offer MIC made in the Greathouse Action was $125,000, which defense counsel indicated was appropriate in light of their evaluation of the case.

16. Greathouse rejected MIC's settlement offer.

17. In June 2016, the Greathouse Action was tried to a verdict and the jury awarded Greathouse $6,466.974.97 against White Oak. Judgement was entered on July 14, 2016.

/ / /

3
**FINDINGS OF FACT AND CONCLUSIONS OF LAW
IN SUPPORT OF SUMMARY JUDGMENT**
Case No.: 2:18-cv-00456-R-JPRx

220505083.v1

18. The Greathouse Action subsequently settled for $5 million, an amount equal to the combined policy limits of MIC's policy and National Union's policy.

19. MIC relied at all times during the Greathouse Action on the expertise and experience of its hired defense counsel, both with respect to litigation strategy as well as case evaluation.

20. Defense counsel believed that the case was defensible and did not consider a jury verdict approaching $6.5 million to be even within the realm of possibility. MIC relied on and accepted defense counsel's opinion.

21. On June 24, 2016, following the verdict, defense counsel submitted a report to MIC explaining that the jury verdict "was not at all expected" given that (a) there were no real surprises in the evidence or argument presented by the parties"; (b) defense counsel had evaluated the potential verdict range as being between $63,000 to $225,000; and (c) the jury refused to assign any fault to Greathouse under the circumstances that should have resulted in a finding of at least 50% comparative fault.

## Conclusions of Law

1. Under California law, "an excess insurer which has settled and discharged the insured's liability may recover from the property insurer an amount in excess of the primary insurer's policy limits if the excess insurer proves that the primary insurer's unreasonable refusal to settle within its policy limits resulted in loss to the excess insurer in an amount in excess of the policy limits of the primary insurer it would not otherwise have had." (*Ace Am. Ins. Co. v. Fireman's Fund Ins. Co.*, 2 Cal.App.5th 159, 183 (2016), *quoting Northwestern Mutual Ins. Co. v. Farmers Ins. Group*, 76 Cal.App.3d 1031, 1050 (1978).)

2. An excess carrier has a claim for equitable subrogation against a primary insurer only if the primary insurer acted *unreasonably and in bad faith* in refusing to settle the case within its primary policy limits. (*RLI Ins. Co. v. CNA Cas. of*

*California*, 141 Cal.App.4th 75, 80 (2006); *Commercial Union Assurance Companies v. Safeway Stores, Inc.*, 26 Cal.3d 912, 916 (1980).)

3. The test of bad faith under these circumstances is whether the primary insurer was aware of facts indicating that there was a "substantial likelihood" of an excess verdict. (*Walbrook Ins. Co. v. Liberty Mutual Insurance Co.*, 5 Cal.App.4th 1445, 1460-61 (1992).) "Substantial likelihood" is the equivalent of "strong probability." (*Id.* at 1460-61.)

4. The question whether a primary insurer acted in bad faith is not a hindsight test; rather the Court must consider only the information that was available to the insurer at the time of the rejected settlement offer. (*Hodges v. Standard Accident Insurance Company*, 198 Cal.App.2d 564, 574 (1961).)

5. The exercise of good faith does not require that the unusual out-of-the-ordinary verdict be anticipated, since the act of appraising a case is not an exact science and there is room for a variety of honest judgments. (*Walbrook Ins. Co. v. Liberty Mutual Insurance Co.*, 5 Cal.App.4th 1445, 1460 (1992).

6. MIC's mistaken estimation that any potential liability against White Oak in the Greathouse Action would be within MIC's policy limits was not so unrealistic, unfair, unintelligible or dishonest as to amount to bad faith, especially where MIC reasonably failed to anticipate the unusual, out-of-the-ordinary verdict returned against White Oak. (*Walbrook Ins. Co. v. Liberty Mutual* (1992) 5 Cal.App.4th 1445, 1460-61; *Hodges v. Standard Accident Insurance Company*, 198 Cal.App.2d 564, 575 (1961).)

7. MIC was entitled to rely on the judgment of competent defense counsel with respect to questions of litigation strategy, including what investigations to conduct and which witnesses to depose. Having retained competent counsel to defend White Oak in the Greathouse Action, MIC had no legal obligation to conduct its own investigation

220505083.v1

and alter its trial strategy against the recommendations of defense counsel; instead, MIC was entitled to give defense counsel the discretion to manage all the details of the litigation, including any necessary investigation and discovery. (*Merritt v. Reserve Ins. Co.*, 34 Cal.App.3d 858, 880-82 (1973).)

8. As a matter of law, National Union has no valid claim for equitable subrogation against MIC because National Union has not proven that MIC acted *unreasonably and in bad faith* in refusing to settle the Greathouse Action within its primary policy limit. (*RLI Ins. Co. v. CNA Cas. of California*, 141 Cal.App.3d 912, 916 (2006); *Commercial Assurance Companies v. Safeway Stores, Inc.*, 26 Cal.3d 912, 916 (1980).)

Dated: November 20, 2018

_____
Hon. Manuel L. Real
United States District Court Judge